# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **WATERLOO SPARKLING WATER CORPORATION**<br>2612 E. Cesar Chaves St., # 200<br>Austin, TX 78702<br><br>          Plaintiff,<br><br>-v-<br><br>**PRO-LIQUITECH, LLC, d/b/a FLAVORMAN**<br>c/o David A. Dafoe, Registered Agent<br>809 South 8th Street<br>Louisville, KY 40203<br><br>          Defendant. | Civil Action No. 3:23-cv-225-CHB<br><br>Judge _____<br><br><br>**COMPLAINT WITH JURY DEMAND** |

Plaintiff Waterloo Sparkling Water Corporation ("Waterloo" or "Plaintiff"), by and through its undersigned attorneys, and for its Complaint against Pro-Liquitech, LLC, d/b/a Flavorman ("Flavorman" or "Defendant"), alleges as follows:

## STATEMENT OF THE CASE

1. Waterloo is a sparkling water company offering its customers a variety of flavored sparkling water. In 2018, it entered into an agreement with Flavorman, a Kentucky corporation specializing in beverage formulations, pursuant to which Flavorman would supply the flavoring ingredients that help give Waterloo's sparkling water its distinct and delicious flavor. Waterloo relied on Flavorman to supply ingredients within the specifications and standards agreed to between the parties.

2. However, Flavorman materially breached the parties' agreement by supplying substandard flavor ingredients that did not meet quality standards and/or specifications and which

led to a batch of sparkling water that was so distasteful that Waterloo had to destroy thousands of cans of its product. As a result of Flavorman's breach, Waterloo has incurred hundreds of thousands of dollars in expenses, including the costs of an investigation into the incident to confirm that the foul taste of the batch of sparkling water in question resulted from the substandard product supplied by Flavorman and the costs associated with destroying thousands of cans of its product.

3. Waterloo promptly informed Flavorman of the issue and has repeatedly attempted to resolve the matter amicably. However, Flavorman has refused to take responsibility for the incident or for the ensuing damages to Waterloo, forcing Waterloo to file the present action.

## **THE PARTIES**

4. Waterloo is a Delaware corporation with offices at 2612 E. Cesar Chavez Street, Suite #200, Austin, TX 78702.

5. Pro-Liquitech, LLC, d/b/a Flavorman is a Kentucky limited-liability corporation with offices at 809 South 8th Street, Louisville, KY 40203.

## **JURISDICTION AND VENUE**

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because the matter involves citizens of different states. Specifically, Waterloo is a Delaware corporation with its principal place of business in Austin, Texas, and thus is a citizen of both the State of Delaware and the State of Texas. Pro-Liquitech, LLC, d/b/a Flavorman is a limited-liability company organized under the laws of the Commonwealth of Kentucky with its principal place of business in Louisville, Kentucky, and its sole member and manager, David Dafoe, is a citizen of the Commonwealth of Kentucky; thus, Flavorman is a citizen of the Commonwealth of Kentucky.

7. This Court has personal jurisdiction over Flavorman because it is organized under the laws of the Commonwealth of Kentucky and because it has its principal place of business in this District.

8. The agreement between the parties also provides for resolution of the dispute by Kentucky state or federal courts. Section 17.5 of the parties' agreement provides that "[a]ll parties submit, hereby, to the exclusive jurisdiction of either the state or federal Courts located in Jefferson County, Kentucky." *See* Dec. 3, 2018 Supply Agreement between Waterloo and Flavorman, attached as **Exhibit 1** ("Ex. 1").

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District with respect to this action, and there is no other district in which the action may otherwise be brought. The parties also agreed to exclusive venue within the state or federal courts located in Jefferson County, Kentucky. *See* Ex. 1.

## STATEMENT OF FACTS

10. Waterloo and Flavorman entered into a Supply Agreement on December 3, 2018, which required Flavorman to supply Waterloo with various flavoring ingredients. *See* Ex. 1. Pursuant to the parties' agreement, Flavorman agreed to supply Waterloo with flavoring ingredients meeting strict quality control standards. *See* Ex. 1, § 8.2.

11. Flavorman also agreed that it would supply products that complied with Waterloo's specifications and applicable regulatory standards, *id*. §§ 8.1, 9.2, and that a written Certificate of Analysis/Certificate of Compliance would be included in each batch of flavoring ingredients. *Id*. § 8.4. Such a certificate accompanied the defective lot in question, Lot No. 32319-12.

  12. Flavorman further agreed that it would:

> [I]ndemnify and hold harmless [Waterloo] … from and against any and all claims, suits, demands and actions … as well as any damages, losses, liabilities, costs and fees (including reasonable attorneys' fees and costs of notification, recall and shipment, including without limitation with respect to finished [Waterloo] products) in each case suffered or incurred by any of them in connections with, or resulting from … any alleged or actual defects in a Product, whether latent or patent, including without limitation from the failure of the goods to comply with Specifications and/or any Hazard … [and/or] any breach by [Flavorman] of any representation, warranty or covenant contained herein ….

Ex. 1, § 11.1.

  13. In February 2020, Waterloo discovered that some of its sparkling waters flavored with Flavorman's grapefruit flavoring ingredient tasted foul and sulfurous. After conducting an investigation, Waterloo was able to determine that the foul-tasting products were all flavored with Lot No. 32319-12. The foul taste was present in products flavored with this ingredient regardless of where they were manufactured, packed, shipped, or stored.

  14. Once Waterloo determined that Lot. No. 32319-12 was the cause of the foul taste, it immediately notified Flavorman so that it could rectify the issue. Flavorman acknowledged that its testing had identified that the sulfurous off-notes were present in this lot (a fact which had not previously been disclosed to Waterloo), but claimed that this was due to "normal seasonality" and should not be detectable to ordinary consumers. Flavorman also claimed that the lot was within specification when tested by Gas Chromatography/Mass Spectrometry ("GC/MS"). Flavorman refused to take any steps to remediate the issue.

  15. Waterloo was thus forced to incur further expense to verify the conclusions of its preliminary investigation. Specifically, in March 2020, Waterloo conducted a series of blind taste tests comparing products flavored with Lot No. 32319-12 and those flavored with other lots. The test results confirmed that every product flavored with Lot No. 32319-12—even if only in part—

tasted far worse than products flavored with different lots. Additionally, at its own expense, Waterloo retained the services of a third-party laboratory to conduct GC/MS testing, which showed higher levels of aldehydes and terpenes, contributing to the overly sour and bitter notes present in Lot No. 32319-12 relative to other lots.

16. Waterloo shared the results of its further investigation with Flavorman, but Flavorman refused to acknowledge there was any defect in its Lot No. 32319-12 and failed to offer a plausible explanation for the foul taste. As a result, Waterloo had to destroy tens of thousands of cans of sparkling water that were tainted with Lot No. 32319-12.

17. Flavorman also refused to reimburse Waterloo for the defective lot or for the expenses Waterloo incurred, which total a minimum of $464,443.46 (not including attorneys' fees, interest, or costs).

18. Flavorman's conduct has directly and proximately caused Waterloo to suffer monetary damages for (i) unreimbursed payment for Lot No. 32319-12; (ii) destruction of unused portion of Lot No. 32319-12 following investigation; (iii) repacking of 99,605 units to remove tainted product; (iv) destruction of tainted cans; (v) cost of third-party laboratory testing; and (vi) attorneys' fees, as contemplated under § 11.1 of the Supply Agreement.

19. As a result of Flavorman's failures and breaches, Waterloo terminated the Supply Agreement on November 4, 2020.

20. In the November 4, 2020 termination letter, Waterloo requested that Flavorman remit payment of the above total amount to Waterloo by no later than November 20, 2020, in accordance with Section 11.1 of the Supply Agreement. To date, Flavorman has failed to do so.

21.     Accordingly, Waterloo brings this action in order to recoup its damages and receive indemnification of the nearly half a million dollars in expenses it incurred as a result of Flavorman's defective and substandard batch of flavoring ingredients.

## COUNT I
### (Breach of Contract)

22.     Plaintiff realleges and incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

23.     Waterloo and Flavorman executed a valid and binding agreement by which Flavorman was to supply Waterloo with various flavoring ingredients meeting strict quality-control standards.

24.     Flavorman agreed to supply Waterloo with flavoring ingredients meeting strict quality-control standards. Ex. 1, § 8.2.

25.     Flavorman provided the products at issue pursuant to the parties' agreement.

26.     Flavorman also agreed that its products would comply with Waterloo's specifications and all applicable regulatory standards. *Id.* §§ 8.1, 9.2. Each batch of flavoring ingredient was to be shipped with a written Certificate of Analysis/Certificate of Compliance. *Id.* § 8.4.

27.     Flavorman further agreed that its products would be fit for the purpose for which they were intended. *Id.* § 9.2.

28.     Waterloo paid Flavorman for its products, and Flavorman received and accepted payment from Waterloo for its products.

29.     Flavorman has breached its obligations under the agreement.

30.     Waterloo has fully performed its obligations under the agreement.

31. Waterloo has incurred damages in excess of $75,000.00, exclusive of interest and costs, as a result of Flavorman's breach of the agreement and Flavorman's failure to take responsibility for its breach.

## COUNT II
**(Declaratory Judgment)**

32. Plaintiff realleges and incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

33. Section 11.1 of the Supply Agreement requires Flavorman to indemnify Waterloo for "all damages, losses, liabilities, costs and fees (including reasonable attorneys' fees and costs of notification, recall and shipment, including without limitation with respect to finished Waterloo products) in each case suffered or incurred by any of them in connection with, or resulting from (a) product liability in any way relating to a Product, (b) any alleged or actual defects in a Product, whether latent or patent, including without limitation from the failure of the goods to comply with Specifications and/or any Hazard, [. . .] (d) any breach by Supplier of any representation, warranty or covenant contained herein, (e) any act, omission, negligence, and/or willful misconduct of Supplier or its agents … ."

34. Waterloo duly and promptly notified Flavorman of its breach and requested indemnification of its expenses resulting from the defects in Flavorman's product and Flavorman's breach of its representation that the product conformed to the Specifications and that it was manufactured and supplied in accordance with Regulatory Standards, as those terms are defined in the parties' agreement. *Id.* § 8.4.

35. Flavorman has not done so.

36. Waterloo is entitled to a judgment declaring that Flavorman is required to indemnify it for the expenses Waterloo has incurred as a result of Flavorman's breach of the parties' agreement.

## COUNT III
### (Breach of Implied Warranties)

37. Plaintiff realleges and incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

38. Flavorman impliedly warranted and represented to Waterloo that it would provide product that was merchantable and that was fit for its intended use.

39. Flavorman was aware of the particular purpose for which Waterloo intended to use the product and Waterloo relied on Flavorman's skill to furnish goods suitable for that particular purpose.

40. As described above, Flavorman breached those warranties and representations by failing to provide product that was merchantable and failing to provide product that was that was fit for its intended use.

41. As a direct and proximate cause of Flavorman's breaches of these implied warranties and representations, Waterloo has incurred damages in excess of $75,000.00, exclusive of interest and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Waterloo Sparkling Water Corporation respectfully prays for the following relief:

a. An order declaring that Flavorman breached its agreement with Waterloo by providing a product that did not meet the required specifications while misrepresenting that it did meet those specifications; by failing to meet strict quality-control standards; by failing to satisfy all applicable regulatory standards; and/or by failing to provide product that was fit for the purpose for which it was intended;

b. An order declaring that Flavorman is required to indemnify Waterloo for all of the damages it sustained as a result of the substandard quality of the product, and ordering that Flavorman indemnify Waterloo in this amount;

c. An award of compensatory damages;

d. An award of attorneys' fees for the cost of this litigation, as well as pre- and post-judgment interest; and

e. Any and all other relief to which Waterloo may appear entitled and which the Court deems just and proper.

Respectfully submitted,

 /s/ *Collin L. Ryan*
Sarah Vonderbrink Geiger (KBA No. 96173)
Amanda Brooke Burton (KBA No. 96213)
Collin L. Ryan (KBA No. 97541)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH  45202
Telephone: 513.579.6400
Fax: 513.579.6457
sgeiger@kmklaw.com
aburton@kmklaw.com
cryan@kmklaw.com

*Attorneys for Plaintiff,*
*Waterloo Sparkling Water Corporation*

## JURY DEMAND

Plaintiff demand a trial by jury.

 /s/ *Collin L. Ryan*
Collin L. Ryan